UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EMILY K. M.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil Action 2:25-cv-1195
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Emily K. M. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

applications for a period of disability and disability insurance benefits ("DIB") and supplemental

security income benefits ("SSI"). This matter is before the undersigned for a Report and

Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's

Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 8).  For the

reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be

**OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.     BACKGROUND

Plaintiff filed her DIB and SSI applications in July 2022, alleging disability beginning

January 26, 2021. (R. at 255–56, 257–63.) After those applications were denied initially and on

reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on December

20, 2024, at which Plaintiff, who was represented by council, and a vocational expert ("VE") appeared and testified. (*Id.* at 72–102.)

At the hearing, Plaintiff's counsel asked the ALJ to admit into the record an Appeals Council decision from an unrelated case that defined the term "superficial interaction."[1] (*Id.* at 76–77.) Counsel acknowledged that the ALJ was not bound by that decision but asked "that it be made part of the file so that . . . it provide[d] some basis for . . . the definition that [he would use] in some hypotheticals to the vocational witness." (*Id.* at 77.) The ALJ indicated that he would take the request "under consideration" but declined to mark the Appeals Council decision as an exhibit at that time. (*Id.*)

On February 10, 2026, the ALJ issued an unfavorable determination. (*Id.* at 44–67.) It became final on August 14, 2025, when the Appeals Council declined review. (*Id.* at 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ committed reversible error by failing to make the Appeals Council decision part of the record given that a state agency reviewer found that she was limited to superficial interactions. (Pl.'s Statement of Errors 6–11, ECF No. 13.) The Commissioner correctly contends that this contention lacks merit. (Def.'s Mem. in Opp'n 4–9, ECF No. 14.)

---

[1] The July 27, 2022 Appeals Council decision in an unrelated case provided as follows:

'[S]uperficial interaction' is a term that is readily defined, easily understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interaction, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkes, the general public, and/or supervisors. The term is distinguishable and distinct from "occasional" which describes the frequency of interactions with others and how much interaction the claimant could tolerate on a sustained basis.'"

(Exhibit, Pl.'s Statement of Errors 4–5, ECF No. 13–1, PageID #558–59.)

2

## II.     THE ALJ'S DECISION

The ALJ issued the unfavorable determination on February 10, 2025. (R. at 44–67.) The

ALJ initially determined that Plaintiff met the insured status requirements through March 31,

2026. (*Id*. at 50.) At step one of the sequential evaluation process,[2] the ALJ determined that

Plaintiff had not engaged in substantial gainful activity since her January 26, 2021 alleged

disability onset date. (*Id*.) At step two, the ALJ determined that Plaintiff had the following severe

medically determinable impairments: anxiety disorder; major depressive disorder; polysubstance

abuse disorder; post-traumatic stress disorder; peripheral artery disease; lupus; Sjogren's

syndrome; a history of right ankle fractures – status/post ORIF; lumbar spondylosis; and edema

of the bilateral lower extremities. (*Id*.) At step three, the ALJ determined that Plaintiff did not

---

[2] Social Security regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Does the claimant's severe impairment, alone or in combination with other impairments, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

have an impairment or combination of impairments that met or medically equaled one of the

listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 51.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she should avoid climbing ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs; she could occasionally stoop, kneel, crouch, and crawl; she should avoid all exposure to hazards; she could occasionally interact with the public, coworkers, and supervisors, where all communications are limited to the straightforward exchange of information without negotiation, persuasion or conflict resolution; and she could deal with occasional changes in a routine work setting.

(*Id*. at 53.)

At step four, the ALJ relied on the VE's testimony and determined that Plaintiff could not

perform her past relevant work. (*Id*. at 59.) At step five, the ALJ again relied on the VE's

testimony and determined that considering Plaintiff's age, education, work experience, and RFC,

there were jobs that existed in significant numbers in the national economy that she could

perform, including the representative jobs of food and beverage order clerk, document preparer,

and assembler. (*Id*. at 61.) The ALJ therefore determined that Plaintiff was not disabled within

the meaning of the Social Security Act during the relevant time frame. (*Id*. at 62.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision

by the Commissioner as long as it is supported by substantial evidence and was made pursuant to

proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that ALJ erred by refusing to admit into the record an Appeals Council decision from an unrelated case defining "superficial interaction," particularly because a state agency reviewer found that she was limited to superficial

interactions. (Pl.'s Statement of Errors 6–11, ECF No. 13.) The undersigned concludes that this contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and

---

[4] Because Plaintiff's application was filed in 2022, it is subject to regulations governing applications filed after March 27, 2017.

nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20

C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

Here, the state agency reviewer at the initial level found that Plaintiff was "limited to

work in an environment that has an (*sic*) occasional social interaction demands and that does not

require interaction beyond a superficial level." (R. at 109.) The ALJ evaluated that finding as

follows:

> Moreover, the undersigned considered the opinion of the State Agency
> psychological consultant at the Initial level (2A & 4A), who opined the severity of
> the claimant's mental impairments cause moderate limitations in the areas of social
> interaction and adaption. The undersigned finds the psychological consultant's
> opinion to be only partially persuasive, as said opinion is generally consistent with
> and supported by the totality of the record, which documents a history of
> conservative care for the claimant's severe mental impairments. While the
> undersigned agrees that the totality of the record supports moderate limitations in
> the areas of social interaction and adaption, the opinion of the reviewing consultant
> is not found to be more persuasive, due to the use of a non-vocationally relevant
> term, "superficial," which is not vocationally defined. As this term is not
> vocationally defined, it does not adequately articulate the limitation for use in a
> residual functional capacity assessment. Therefore, the undersigned declines to
> adopt said term in fashioning the above-noted RFC. While no definition was
> provided for terms such as "brief" or "superficial," this finding may be read to
> indicate that the State Agency examiners concluded that the claimant has general
> limitations in both the quantity and quality of interaction in which they may engage
> in a work setting. The undersigned finds that the above-stated, more precise, RFC
> adequately accounts for and accommodates the functional limitations resulting
> from the claimant's mental impairments by limiting the nature of her interactions
> with others in the workplace, due primarily to the limiting effects of anxiety and
> trauma-based mental health symptoms.

(*Id*. at 57–58.)

As this discussion demonstrates, the ALJ discounted the reviewer's findings, and

specifically the reviewer's superficial interaction finding, because "superficial" was not

"vocationally defined." (*Id*.) The ALJ further explained that she concluded that the reviewer

intended to convey a limit about the quality of Plaintiff's workplace interactions and that she

would include in Plaintiff's RFC limits that, in the her view, more precisely described that qualitative limit. (*Id.*)

Although the ALJ characterized the term "superficial" as lacking a vocational definition, the Sixth Circuit Court of Appeals has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert.")).

District Courts in the Sixth Circuit have also held that a limit to superficial interactions is understood as a limit regarding the quality[5] of a plaintiff's workplace interactions. *See, e.g.*, *Deana L. F. v. Comm'r of Soc. Sec.*, No. 2:25-CV-1121, 2026 WL 1587259, at *2 (S.D. Ohio June 3, 2026) ("The Undersigned agrees with those judges who have concluded that, at least with respect to the term 'superficial,' it is capable of being understood and translated into vocational limitations."); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (explaining that "'superficial interaction' is a well-recognized, work-related limitation"), *report and recommendation adopted sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation."); *William*

---

[5] The undersigned has also previously explained that limits to superficial, occasional, and brief interactions refer to limits in different dimensions of communication (*i.e.*, quality, frequency, and duration, respectively). *James M. G. v. Comm'r of Soc. Sec.*, No. 2:25-CV-300, 2025 WL 2502321, at *4 (S.D. Ohio Sept. 2, 2025).

8

*H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00219, 2022 WL 4591304, at *4 (S.D. Ohio Sept. 30, 2022) (same); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (same); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (S.D. Ohio Feb. 6, 2023) (same), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023).

As a result, District Courts have found reversible error when an ALJ discounts an opined superficial interaction limit only because it is purportedly vague or "not vocationally relevant." *See, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *4–5 (S.D. Ohio Apr. 12, 2021), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021). Likewise, District Courts have found reversible error where an ALJ credits a medical opinion or prior administrative finding that includes a superficial interaction limit but then omits that limit or substitutes another limit for it without adequately explaining why. *See, e.g.*, *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-171, 2022 WL 14346260, at *3–4 (S.D. Ohio Oct. 25, 2022), *report and recommendation adopted sub nom., Sue A. M. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022); *Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *5 (S.D. Ohio June 1, 2021), *report and recommendation adopted,* 2021 WL 2533191 (S.D. Ohio June 21, 2021).

These principles do not, however, establish reversible error in all cases. For instance, there is no error when an ALJ discredits a superficial interaction for legitimate record-based reasons in addition to its purported vagueness. *See, e.g., Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (finding no error where ALJ discounted a superficial interaction limit for vagueness; ALJ also discounted it because it was inconsistent with treatment records describing plaintiff as pleasant and cooperative).

9

Similarly, there is no error when an ALJ discounts a superficial limit because it is purportedly vague but nevertheless includes limits in an RFC that adequately captures the qualitative nature of a superficial interaction. *See, e.g.*, *Dickinson v. Comm'r of Soc. Sec.*, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (finding no error where ALJ declined to incorporate an opined superficial interaction because it was "not vocationally relevant;" ALJ included a "no tandem task" limit that adequately addressed it).

Finally, the Sixth Circuit has clarified that because superficial is not defined by regulation or agency guidelines, when an opining source does not define a superficial interaction limit, an ALJ may define that limit provided the ALJ's definition reasonably captures the qualitative nature of the restriction. *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) (finding ALJ did not err where he "delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context.").

That final scenario is at issue here. Although the ALJ stated that the term "superficial" was not vocationally defined, the ALJ did not reject the reviewer's limit outright. Rather, she explained that she understood the reviewer to be limiting the quality of Plaintiff's interactions and that she would include restrictions in Plaintiff's RFC "limiting the nature of her interactions with others in the workplace." (R. at 57–58.) She then implemented that restriction by limiting Plaintiff to interactions where "where all communications are limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution . . . " (*Id*. at 53.) Courts have found that materially similar limits adequately capture the qualitative nature of a superficial interaction limit. *See, e.g.*, *Mabry-Schlicher*, 2025 WL 1604376, at *5 (finding ALJ adequately accommodated superficial interaction limit by restricting plaintiff to simple

instructions, simple questions, and receiving performance appraisals but no "complex social interactions such as persuading other people or rendering advice."); *Leonard F. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-04183, 2024 WL 469053, at *12 (S.D. Ohio Feb. 7, 2024) (finding it within an ALJ's discretion to define superficial social interactions as "the straightforward exchange of information, without negotiation, persuasion, or conflict resolution"), *rejected in part on other grounds*, 2024 WL 1254354 (S.D. Ohio Mar. 25, 2024); *Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1969, 2023 WL 5717417, at *6–7 (S.D. Ohio Sept. 5, 2023) (finding an ALJ did not err by defining superficial interaction as "the straightforward exchange of information, without negotiation, persuasion, or conflict resolution").

Plaintiff nevertheless contends that the ALJ erred by failing to admit into the record the Appeals Council decision from an unrelated case that defined superficial interactions as cursory or shallow. (Pl.'s Statement of Errors 6–11, ECF No. 13.) According to Plaintiff, the ALJ "was free to adopt her own definition" without challenge because the record lacks a definition from the reviewer or a competing definition. (*Id*. at 7.) Plaintiff maintains that the Appeals Council decision would have supplied that competing definition. (*Id*. at 8–10.) Plaintiff further contends that this was not harmless error because the VE testified that a limit to cursory or shallow interactions would been work preclusive. (*Id*. at 10–11.)

The Court is not persuaded. As a preliminary matter, Plaintiff points to nothing that suggests that the Appeals Council decision is legally binding or has any authority outside the case in which it was issued. Indeed, numerous District Courts in this Circuit have held that this very same Appeals Council decision has no precedential value beyond the case in which it was entered. *See, e.g., Dallas B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-19, 2025 WL 3710871, at *5

11

(S.D. Ohio Nov. 7, 2025) (collecting cases), *report and recommendation adopted*, 2025 WL 3709000 (S.D. Ohio Dec. 22, 2025).

Moreover, and as noted above, an ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R §§ 404.1545(a)(1); 416.945(a)(1). "Evidence is defined as 'something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact.'" *United States v. Shannon*, 803 F.3d 778, 784 (6th Cir. 2015) (quoting *Black's Law Dictionary* (10th ed. 2014)). The Appeals Council decision does not bear on any fact relevant to Plaintiff's RFC–*i.e.*, what she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

At most, the Appeals Council decision, defining superficial interactions as cursory or shallow, offered an alternative definition of the term as used in another proceeding. But the proper vehicle for exploring the meaning or vocational significance of the term was the hearing itself. Plaintiff's counsel was free to ask the VE if a superficial interaction limit would have produced a different impact on the occupational base than the social interaction restrictions ultimately adopted by the ALJ.  Plaintiff's counsel did not do so.

To be sure, Plaintiff's counsel did ask the VE about social interaction limits. At the December 2024 hearing, the ALJ asked the VE if a hypothetical person with an RFC that ultimately matched Plaintiff's would be capable of performing work that existed in significant numbers in the economy. (R. at 94–95.) The VE answered in the affirmative. Plaintiff's counsel then asked the VE the following:

Q: Okay, and if we went back to the Judge's initial hypothetical, but if we made a slight change to that with regards to the interaction, so we left as far as the frequency, still at occasional, but with regards to the additional limitations on that interaction if we instead of the straightforward exchange, no conflict resolution and so forth, if we took that out and instead replaced that with the individual would be limited to no more than cursory or shallow from a quality standpoint, with regards to supervisors, would I be correct in assuming such an individual would have difficulty going through a normal interview, training and probationary periods as well as participate in Employer/employee evaluations?

A: If they wouldn't be able to take simple direction from an Employer or correction or anything like that with just normal non-confrontive interaction, it would be difficult to maintain employment.

(*Id*. at 99.)

But this exchange simply does not establish the proposition that Plaintiff advances. Although Plaintiff's counsel asked the VE about a limit to cursory or shallow interactions with supervisors, the VE did not equate such interactions with superficial interactions. Instead, the VE appeared to equate a limit to cursory or shallow interactions with supervisors to an inability to receive simple directions or corrections in a normal non-confrontational exchange. Plaintiff's counsel did not ask the VE to clarify whether that also equated to a limit to superficial interactions. And again, most importantly, Plaintiff's counsel did not ask the VE if a superficial interaction limit would have produced a different impact on the occupational base than the interaction limits ultimately incorporated by the ALJ.

In sum, the ALJ interpreted the reviewer's superficial interaction limit as a limit about the quality of Plaintiff's interactions and incorporated qualitative restrictions that adequately addressed that limit. Furthermore, the Appeals Council decision from an unrelated case was not relevant evidence bearing on Plaintiff's RFC, and in any event, Plaintiff has not demonstrated that its exclusion from the record prejudiced her.

13

## V.    RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

14

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE